UNITED STATES DISTRICT COURT
FOR THE  EASTERN DISTRICT OF MICHIGAN


MARK COLIN JENNINGS II,

              Petitioner,

                                            File No. 08-031116-FC
                                                    08-031117-FH
                                                    08-031118-FH

vs.

WILLIE SMITH,  WARDEN

              Respondent.
_____/

ROBERT J. DUNN (P33726)
Attorney for Petitioner
 822 Washington Avenue
Bay City, MI 48708
(989)894-1110
_____/

## <u>PETITION TO VACATE CONVICTION PURSUANT  TO<br> 28 U.S.C. SECTION 2254</u>

        **NOW COMES** Petitioner,   **MARK COLON JENNINGS II**, by and through his Attorney, **ROBERT J. DUNN**, and for his Petition respectfully states as follows:

        1.     That Defendant was convicted in Michigan state court, Saginaw County, of the offense of Criminal Sexual Conduct First Degree, contrary to M.C.L.A. 750.520 after a  state jury trial on December 8, 2010.

        2.     That Defendant was thereafter sentenced by the Honorable Robert Kaczmarek, Circuit Court Judge to a term of 30-50 years.

        3.     That up until his appeal he was represented by Edward M. Czuprynski.

        4.     That his conviction was affirmed by the Michigan Court of Appeals on March 13, 2012, and leave to appeal was denied by the Michigan Supreme Court on September 24, 2012.

1

5.     That application of M.C.L.A. 768.27 which provides that any and all alleged prior sexual acts no matter how dissimilar or remote in time and regardless of any judicial balancing of prejudice under M.R.E. 404(B) be admitted into evidence deprived Defendant of his Sixth Amendment right to a fair trial and was contrary to clearly established Supreme Court precedents as set forth in the accompanying brief, and requires relief here under 2254(d)(1).

6.     That the determination by the state courts that prosecutorial misconduct did not constitute an unreasonable determination of the facts and was contrary to clearly established U.S. Supreme Court precedent as set forth in the accompanying brief requiring relief under 2254(d)(1) and (2).

7.     That Petitioner is housed at the Carson City facility in the Western District of Michigan but his conviction in Saginaw in the Eastern District of Michigan verts the Eastern District with proper venue.

WHEREFORE, Petitioner respectfully prays this Honorable Court enter an order to vacate his convictions under 28 U.S.C. Section 2254.

Dated: September 18, 2013                    s/ Robert J. Dunn_____
                                             ROBERT J. DUNN (P33726)
                                             Attorney for Defendant
                                             822 Washington Avenue
                                             Bay City, Michigan    48708
                                             (989)894-1110

2

UNITED STATES DISTRICT COURT
FOR THE  EASTERN DISTRICT OF MICHIGAN


MARK COLIN JENNINGS II,

        Petitioner,

                                          File No. 08-031116-FC
                                                08-031117-FH
                                                08-031118-FH

vs.

WILLIE SMITH,  WARDEN

        Respondent.
_____/

ROBERT J. DUNN (P33726)
Attorney for Petitioner
 822 Washington Avenue
Bay City, MI 48708
(989)894-1110
_____/

**BRIEF IN SUPPORT OF PETITION TO VACATE PURSUANT TO
28 U.S.C. SECTION 2254**


**ROBERT J. DUNN (P33726)
Attorney for Petitioner
MARK COLIN JENNINGS II
822 Washington Avenue
Bay City, Michigan    48708
(989)894-1110**

**TABLE OF CONTENTS**

LIST OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .ii

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF QUESTIONS PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . .v

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

**ARGUMENT** 1

**M.C.L. 768.27 IS   UNCONSTITUTIONAL  BECAUSE  IT   INFRINGES   ON THE   JUDICIARY'S  CONSITUTIONAL  AUTHORITY  FOR  THE  REASON  IT VIOLATES    THE  CONSITUTIONAL  GUARANTEE  OF  DUE  PROCESS  OF LAW BECAUSE IT LEGISLATIVELY MANDATES ADMISSION OF EVIDENCE NOT  SUBJECT  TO  THE  GATEKEEPER FUNCTION OF INSURING A FAIR TRIAL**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**4**

**Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

**ARGUMENT 2**

**THE DEFENDANT WAS DENIED A FAIR TRIAL BY THE PROSECUTOR'S EGREGIOUS MISCONDUCT BOTH QUESTIONNING WITNESSES AND IN COMMENTS TO THE JURY WHICH OCURRED IN  A  TRIAL  THAT  WAS NOT OTHERWISE FAIR**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

**Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .**9**

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

I

# **LIST OF EXHIBITS**

Court of Appeals Unpublished Opinion dated March 13, 2012 . . .EXHIBIT A

Michigan Supreme Court Order dated  September 24, 2012. . . . . .EXHIBIT B

## INDEX OF AUTHORITIES

### UNITED STATES SUPREME COURT

**Arizona vs. Fulminknte**; 499 U.S. 279 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . .8

**Brecht vs. Abrahamson**; 507 U.S. 619 (1993). . . . . . . . . . . . . . . . . . . . . . . 7

**Clinton vs. City of New York**; 524 U.S. 417 (1998). . . . . . . . . . . . . . . . . . . . 7

**Donnelly vs. Delbristforo**; 416 U.S. 637 (1974). . . . . . . . . . . . . . . . . . . . . . . . 19

**Fry vs. Philec**; 127 SCt. 232 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Huddleston vs. United States**; 485, U.S. 681, 691 (1988). . . . . . . . . . . . . . 7,19

**Kotteakos vs. United States**; 328 U.S. 750, (1946). . . . . . . . . . . . . . . . . . . . . 7

**O'Neal vs. McAnnish**; 513 U.S. 432 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . 7

### MICHIGAN COURT OF APPEALS

**Clemmons vs. Sounders**; 34 F3d, 332 (6th Cir. 1994). . . . . . . . . . . . . . . . . . . 19

**People vs. Roper**; 286 Mich. App. 77; 777 NW2d 483 (2009). . . . . . . . . . . . . 17

**Pritchett vs. Pitcher**; 117 F3d 959 (6th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . 9

**United States vs. Larson**; 112 F3d 600, 604-605 (CA 2, 1997). . . . . . . . . . . . 6

**United States vs. LeMay**; 260  F3d, 1018, 1022 (CA 9, 2001) . . . . . . . . . . . . .6

**Washington vs. Hofbauer**; 228 F3d 689 700 (6th Cir. 2000). . . . . . . . . .   8,9,10

### MICHIGAN SUPREME COURT

**People vs. Lincoln Anderson Watkins**;  Docket No. 142031 . . . . . . . . . . . . . 4

**<u>OTHER AUTHORITIES</u>:**

**M.C.L. 750.520(1)(b).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**
**M.C.L.A. 768.27b.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**
**M.C.L.A. Section 768.27.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
**M.C.L.A. 768.27a.** . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4,5,6,9,17**
**M.R.E. 404 (b)(1).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**
**M.R.E. 403** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4,5,6,8**

iv

## STATEMENT OF QUESTIONS PRESENTED

### QUESTION I

**M.C.L. 768.27 IS UNCONSTITUTIONAL BECAUSE  IT  INFRINGES ON  THE JUDICIARY'S  CONSITUTIONAL  AUTHORITY    FOR  THE  REASON  IT VIOLATES    THE CONSITUTIONAL GUARANTEE OF DUE PROCESS OF LAW  BECAUSE  IT  LEGISLATIVELY  MANDATES  ADMISSION   OF EVIDENCE  NOT  SUBJECT  TO  THE  GATEKEEPER  FUNCTION  OF INSURING A FAIR TRIAL.**

### ARGUMENT II

**THE DEFENDANT WAS DENIED A FAIR TRIAL BY THE PROSECUTOR'S EGREGIOUS MISCONDUCT BOTH QUESTIONNING WITNESSES AND IN COMMENTS TO THE JURY WHICH OCURRED IN  A  TRIAL  THAT  WAS NOT OTHERWISE FAIR.**

## STATEMENT OF FACTS

Mark Colon Jennings II, was convicted of first-degree Criminal Sexual Conduct M.C.L. 750.520b(1)(b), and habitual offender, third offense, M.C.L. 769.11 in Saginaw County, Michigan.   The alleged Criminal Sexual Conduct alleged involved Mr. Jennings daughter, Katreena Jennings, when she was under 16 years of age.   The jury trial took place between November 16, 2010 and December 8, 2010.   On January 18, 2011, the trial court sentenced Mr. Jennings to a term of 30 years to 50 years in prison.

Mr. Jennings had been originally charged with three other counts of first-degree Criminal Sexual Conduct and one count of Second Degree Criminal Sexual Conduct involving Katreena Jennings.   Those counts were severed as were two other cases involving other complainants, File No. 08-031117-FH-2 and 08-031118-FH-2.

Prior to the trial the defense challenged the admissibility of certain prior "similar" acts evidence of minors Kirsten Risely  and Cassandra Jennings.   A third such witness was Defendant's sister Stephanie  Averill who the prosecutor only offered during the rebuttal case claiming the Defendant opened the door.

Victoria  Raymond testified to acts beginning when both were minors over 30 years prior.   (Vol. XI TR. pg. 9-27)   Judge Kaczmarek gave Michigan's standard 404(b) instruction, although the prosecutor asserted that the evidence was admissible without any judicial balancing test under a relatively new statute M.C.L.A. 768,27b which simply provided that in criminal sexual penetration cases

1

involving minors that such evidence "shall be admissible".

The constitutionality of the statute was challenged in Jennings direct appeal because it removed from the trial court its gatekeeper function and allowed the prosecutor almost unlimited character evidence regardless of its prejudicial effect.

The Defendant also raised issues regarding damaging hearsay issues regarding damaging hearsay evidence from a police officer and one of the complaining witnesses.   He also claimed prosecutorial misconduct by various improper comments by the prosecutor through the trial.

The Michigan Court of Appeals affirmed the conviction in the direct appeal on March 13, 2012.   The court relied on the <u>Pattison</u> case in holding that M.C.L.A. Section 768.27 was not unconstitutional because the statute "does not principally regulate the operation or administration the courts " and that the "standard for obtaining a conviction has nor changed.   However, the court did hold tht trial courts must still balance the proferred evidence under M.R.E. 403.

The court using plain error review on the prosecutorial misconduct issue found that some comments were fair comments based on Defendant's own testimony and others were improper but isolated and thus did not rise to the level of plain error.

The Court of Appeals did find that Officer Luberda's hearsay testimony with the alleged victim should not have been admitted but the error was harmless because the case was  very strong otherwise.

2

The Michigan Supreme Court denied leave on September 24, 2012. This petition under Section 2254 now follows alleging Defendant is denied his federal Constitutional rights because of an unreasonable determination of the facts by the Michigan Courts and its ruling contrary to clearly establish U.S. Supreme Court precedents.

## ARGUMENT 1

## M.C.L. 768.27 IS UNCONSTITUTIONAL BECAUSE  IT  INFRINGES ON  THE  JUDICIARY'S  CONSITUTIONAL  AUTHORITY    FOR  THE  REASON  IT  VIOLATES    THE CONSTITUTIONAL GUARANTEE OF DUE PROCESS OF  LAW   BECAUSE   IT   LEGISLATIVELY   MANDATES   ADMISSION   OF  EVIDENCE   NOT   SUBJECT   TO   THE   GATEKEEPER   FUNCTION   OF  INSURING A FAIR TRIAL.

## ARGUMENT

The prosecutor filed a notice on July 9, 2009, of his intent to introduce evidence of similar acts pursuant to the authority of M.C.L. 768.27a in the present case.   The notice says that "The other evidence that will be offered during the course of the trials in the above listed cases is contained within the police reports and other materials of discovery previously provided to the defense in the above referenced cases".

There was testimony from four young ladies, Lacey Davis, Stephanie Averill, Kirsten Riselay, and Cassandra Jennings that the prosecutor claimed was admissible under M.C.L. 768.27A (Vol. 1 TR. pg. 9-10), as well as testimony from the Defendant's sister, Victoria Raymond, about an incident that allegedly occurred when both she and the Defendant were children.

Just recently, the Michigan Supreme Court decided  in People vs. Lincoln Anderson Watkins, Supreme Court Docket No. 142031, Court of Appeals Docket No. 291841 that the court upheld the constitutionality of 768.27a but also held that the statute does not override M.R.E. 403 and the judge must still be the gatekeeper to determine whether evidence should be excluded for being substantially more prejudicial than probative.   That was not done in this case

4

because the prosecutor misled the judge by informing him that 768.27a is not subject to the balancing test.   This is because Mr. Duggan and other Michigan prosecutors take the position that because the statute provides that evidence of past acts of sexual abuse against minors shall be admitted that such language prevents the trial judge from excluding the evidence under M.R.E. 403.

The Michigan Constitution (Const. 1963, art 6, Section 5) provides that "The Supreme Court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state." M.R.E. 404(b) explicitly prohibits the use of other crimes, wrongs, or acts to prove the character of  a Defendant.   It limits other acts evidence to ". . . proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case. " M.R.E. 404(a) prohibits the use of the character of the accused unless it is evidence of" . . . .a pertinent trait of character offered by accused, or by the prosecution to rebut the same; or if evidence of a trait of character of the alleged victim of the crime is offered by the accused and admitted under subdivision (a)(2) of M.R.E. 404 evidence of a trait of character for aggression of he accused offered by the prosecution.

By contrast, M.C.L.A. allows ". .   evidence that the Defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." M.C.L. 768.27a

5

does not prohibit character evidence, as long as it is evidence that the Defendant committed a listed offense against a minor.

M.C.L.A. 768.27a does not eliminate the provision under M.R.E. 403 that evidence may be excluded if its probative value is substantially outweighed by the danger of the unfair prejudice.

FRE 414  was passed by the United States Congress to provide for admission of certain evidence in child sexual assault cases in the federal system. FRE 414,  which is very similar to M.C.L. 768.27a, provides that:

**"in a criminal case in which the Defendant is accused of an offense of child molestation, evidence of the   Defendant's   commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant".**

United States vs. Larson; 112 F3d  600, 604-605 (CA 2, 1997) holds that  F.R.E. 403, which is identical to M.R.E. 403 is still governed by FRE 403.   A trial court's decision not to exclude evidence pursuant to F.R.E. 403 is reviewed only for abuse of discretion.  Id.  Se also United States vs. LeMay, 260 F3d 1018, 1022 (CA 9, 2001).

If this statute eliminates the gatekeeper function the trial courts to insure the evidence is not unfairly prejudiced.

M.C.L.A. 768.27a violates the United States Constitution because it denies criminal Defendants the presumption of innocence inherent in due process of law and because it constitutes an attempt by the legislative branch of government to  use up the constitutional authority of the judicial branch.   (See the

6

Clinton vs. City of New York) ; 524 U.S. 417 (1998) decision of the United States Supreme Court.

The decision of the Michigan Courts to uphold admission of this very damning highly prejudicial evidence of no less than four witnesses ofdes alleged prior sexual acts with the Defendant is contrary to clearly established United States Supreme Court authority in Huddleston vs. United States; 485, U.S. 681, 691 (1988).

This court must apply the test announced in Brecht vs. Abrahamson; 507 U.S. 619 (1993) to determine whether the constitutional error had a substantial and injurious effect or influence on the verdict.   The Supreme Court held in Fry vs. Philec; 127 SCt. 232 (2007), that the  Brecht standard applies on habeas regardless of whether the state courts recognize the constitutional error on direct review.

In O'Neal vs. McAnnish; 513 U.S. 432 (1995) the court held, essentially, that the Brecht test amounts to a rule that the petitioner wins unless the federal judge concludes that it is more likely than not that the error did not affect the outcome.   This test is from Kotteakos vs. United States; 328 U.S. 750 (1946) that is routinely applied in federal criminal appeals.

Here the error  of allowing in any and all "prior similar acts" from several witnesses, some of which were 20 years old without any attempt by the trial judge to balance the prejudicial effect certainly affected the outcome when all the evidence that remained was the one complainant who was severely

7

impeached on cross-examination.

This all happened in a trial where the Michigan Court of Appeals found inadmissible hearsay from the complainant came in through Officer Luberda and prosecutorial misconduct described in Argument II.

A compelling argument that structural error occurred can be made which would therefore require a reversal of the conviction.  An adjudication by a biased trial judge is structured error.  Arizona vs. Fulminante; 499 U.S. 279 (1991). With no judge serving the gatekeeper function required by M.R.E. 403  this is in effect the  absence of a trial judge while the evidence is coming in.  It should be treated no differently from the structural error created by the biased trial judge.

The unsurpation by the Michigan legislature of the trial judge's gatekeeper function to keep out evidence substantially more prejudicial than probative   violates the constitutional separation of powers and the evidence admitted in this case is contrary to Huddleston, and other authorities cited herein. As such, this court should vacate the conviction.

The Brecht test is met because without the similar act evidence the case would only have involved one, substantially unpeached witness.    See Washington vs. Hofbauer; 228 F3D 689, 700 (6TH Cir. 2000).

## ARGUMENT II

## THE DEFENDANT WAS DENIED A FAIR TRIAL BY THE PROSE-CUTOR'S EGREGIOUS MISCONDUCT BOTH QUESTIONING WITNESSES AND IN COMMENTS TO THE JURY WHICH OCURRED IN A TRIAL THAT WAS NOT OTHERWISE FAIR.

## ARGUMENT

The test of prosecutorial misconduct is based on the degree to which the misconduct will mislead the jury, the extensive nature of the comments, the prosecutor's deliberations, and the strength of the evidence in the case.   Pritchett vs. Pitcher; 117 F3d 959 (6th Cir. 1997).

The prosecutor made much of what he perceived as Mr. Jennings' life style.   Even the prosecutor's vague notice under M.C.L. 768.27a only included sexual behavior directed against children.    The point about the questions and comments about Mr. Jennings' lifestyle could only have been that Mr. Jennings had a propensity to molest children because of his aberrant sexual behavior.

In Washington vs. Hofbauer; 228 F3d (CA 6 2000), the Defendant was convicted of second-degree criminal sexual conduct involving the nine year old daughter of his girlfriend.   According to the opinion, the prosecutor had" . . . extensively berated Washington's character before the jury, complaining that Washington did not work, beat (the mother of the child) regularly, consumed alcohol excessively, and did not make payments on (the mother's) home.   These statements emerged initially in the state's cross-examination of Washington". Hofbauer, supra, 228 F3d 689, 695.

The prosecutor referred specifically to the Defendant's "lifestyle" and

9

"character" many times.     The Sixth Circuit Court of Appeals found that the prosecutor's repeated attack on the Defendant's character and lifestyle, and particularly his claim that the alleged criminal sexual conduct "fit" the evidence of character and lifestyle, amounted to "severe" prosecutorial misconduct. Washington vs. Hofbauer; supra, 228 F3d 689, 700.     The court held that a conditional writ of habeas corpus should issue based on this, and also on the prosecutor's mischaracterization of evidence and the defense attorney's misstatement of the prosecutor's burden of proof, although the misstatement of the prosecutor's burden of proof was not by itself prejudicial.     Washington vs. Hofbauer, supra 228 F3d 689, 709.

The prosecutor extensively cross-examined Mr. Jennings about his sexual lifestyle, about characteristics that had nothing to do with sexually assaulting children.   (Vol. Viii TR. pg. 44-50).

Q.     Okay.   Do you love Brandi, your former girlfriend, Brandi Averill?

A.     I started having feelings for her, but I don't.

Q.     The answer is no now?

A.     No, not now.

Q.     This is a present tense question.

A.     No, I don't have any feelings now.

Q.     Do you love Shonda Tolliver?

A.     No.  Not as a spouse anymore.   She is my child's mother.

Q.     She was never your spouse?

A.    She was my girlfriend.

Q.    But there is a difference, right?  Spouses and girlfriends?

A.    If you are with somebody, you are with somebody, whether it's on paper or not.


Q.    Well you told this jury at the beginning of your direct examination the way you were raised, if you got a girl pregnant, you married her.   So it sounds like you under stand what the word married is, right?

A.    Yes.

Q.    That is what marriage is.

A.    Yes, okay.   That is what I understand it to be.

Q.    So when you told the jury yesterday that the way you were raised if you got somebody pregnant you married them, that is the kind of marriage you were talking about correct?

A.    With Christy, yes.

Q.    And that statement didn't apply to women you got pregnant, that you didn't marry, because you were already married, correct?

A.    I'm sorry, you can rephrase that?

Q.    I will come back to that.

A.    No, please.

Q.    Do you presently love Audrey Peters?

A.    No.

Q.    Are you, in what you consider, any relationship of love with a woman, with an adult woman right now?

A.    No.

Q.    I noticed during your direct examination yesterday that what you described as you on again, off again relationship with Laura

11

Jennings on the fourth or fifth rebound, you were chuckling.    Why were you chuckling about that?

A.    I don't remember why, and I don't know if it was the fourth or fifth explanation of a rebound.    There have been so many I can't even tell you.

Q.    Did you ever feel personally responsible for creating any of the chaos that you fled?

A.    Of course.    I had a choice to date Christy or Laura.

Q.    So you, as an adult, with your military disability pension, when you couldn't handle the chaos, that you now admit you partly created, you could just leave and did?

A.    I am not really sure how to answer that.    Why would a person stay in a situation where there is chaos?

Q.    Well, then I will ask you; do children have the choice to flee the chaos?    Do they, personally, have the choice, the resources, the freedom to flee the chaos?

A.    Yes, if they wanted to.

Q.    You used the word cheating in your direct exam to describe basic-ally the way Christy carried on with other men while you were her husband.    Were you trying to actually reconcile with in '97,'98?

A.    Um, I think it was more of a one shot, this is it, you know.    I had a lot of –I had to determine in my own self whether it was my fault, her fault, or how exactly this should end.    But I had to close the door. So I had to see her one last time in order to close the door.    Did I answer that correctly?

Q.    Thank you.    In your effort deal with the fact that Christy was cheating, it is true that you took up with Shonda Tolliver?   Got her pregnant with your son, Myles?   And then with Audrey Peter, got her pregnant with your son, Matthew.    About which time you were impregnating your sister-in-law, Laura with your son Nicholas.   Is that all going on at the same time?

A.    No.

12

Q.     Were you cheating in any of those situations?

A.     I cheated on Shonda.    Well we broke up, and that is how I met Audrey.  I had went to a bar and met her.

Q.     Just so I understand your definition of cheat, in your mind, if you are done with a particular woman, whether you communicate that to her or not, even if she is sitting home, pregnant, if in your mind you say I am broken up with her, you can go meet somebody in a bar admit now you partly created you could just leave and did?

A.     I am not really sure how to answer that.    Why would a person stay in a situation where there is chaos?

Q.     Well, then I will ask you; do children have the choice to flee the chaos? Do they, personally, have the choice, the resources, the freedom to flee the chaos?  Like your children?

A.     Yes, if they wanted to.

Q.     They had the choice?

A.     If they wanted to.

Q.     At what age do you think they have the wherewithal emotionally, financially, transportationally, to flee if they think it's chaos?  At what age do you think that your kids could have done that?

A.     At any time.    Obviously, they have the protocol in place if a child need to flee a home for some reason or other, that is in place, and they can leave at any time.    All it takes is a phone call.

Q.     You used the word cheating in your direct exam to describe basically the way Christy carried on with and have a date?  Is that cheating, or not cheating—if you don't even tell the first woman who is home pregnant?

A.     I  guess I really don't see  the relevance of that as to whether I am a child molester or not, whether I am cheating on my girlfriend.    Do you want me to still answer that, Your Honor?

THE COURT:  Well, I think we have spent a lot of time on it.  I agree with you actually.    Go ahead.

13

Later, the prosecutor brought up the same character issues in cross-examining the Defendant's mother Judith Rabidue.  (Vol. III TR. pg. 158-160).

Q.    Were you aware that while the Defendant was married –excuse me, while he was in a relationship with Laura Jennings, before she was called Laura Jennings, he had relationships with Audrey Peters and with Shonda Tolliver?

A.    He was not married to Laura.

Q.    Who was he in a relationship with when he started the affairs with these two women?

A.    He wasn't.

Q.    You were aware of those two women, Audrey and Shonda?

A.    I know Audrey and I knew Shonda.

Q.    They bore what turned out to be more grandsons for you?

A.    Yes.

Q.    Did you ever, personally, advise your son it might be a good idea, by the use of easily available birth control methods, not to  continue to impregnate young women?

A.    I told my son that he could have as many kids as he wanted.   My heart was big enough to live them all.   But he better have a big enough wallet to support them.   Can't control his birth control.  Or theirs.

In his closing argument the prosecutor made this observation for the jury.  (Vol. XI TR. pg. 59).

**You saw his demeanor and you can better understand now than if he would have just stayed at the defense table sitting quietly observing the trial assisting his attorneys.    You understand how he thinks and how he might actually believe with some splendid success to show for it in his life that he could get away with just about anything sexually with an girl or woman. You know that now from hearing him testify.**

**14**

The Michigan Court of Appeals determined that these comments to the jury was harmless error is clearly wrong when considered along with the questions and in telling the jury Defendant had been to prison.    Finally, in his rebuttal argument, the prosecutor said this (Vol. XI TR. pg. 103-104).

Finally, in his rebuttal argument, the prosecutor said this (Vol. XI, TR. pg. 103-104.

**One of the thins that shocked me the most didn't come at the beginning of his argument but he said, in an effort to get your sympathy, which is really not the purpose of a jury, to get sympathy and prejudice to decide cases, and the judge will tell you that, but in an effort to get your sympathy he said, Mark Jennings will never have a normal family life.**

**I added to this because it was incomplete.   In addition to marrying sisters at different times and having all these nieces become his step-children and moving on three separate occasions near, next-door and near where one of the wives was, rather than living together as a family, while all this is going on at various time, he's off meeting up with Shonda and having Miles and Audrey Peters and having Matthew and going back to Laura. That's normal?**

It was necessary to set forth the prosecutor's questioning of witnesses and remarks at some length because prosecutorial misconduct is viewed on a case by case basis.    The entire contest of the prosecutor's remarks acted to deprive Mr. Jennings of a fair trial because it injected irrelevant and prejudicial character evidence into the trial.    To exacerbate the effect of this prejudicial questioning, the prosecutor suggested to the jury that Defendant must have served time in prison because "why would Laura say that unless it was true.   She's his wife she would 'know which argument violated the judge's order he avoid this.

15

(Vol. XI TR. pg. 109).    Thus, in his closing, the prosecutor summed up his character attack on the Defendant.

The Defendant objected to calling his sister, Victoria Raymond as a "bad acts" witness because of lack of notice.    (Vol. II TR. pg. 4-5).    The prosecutor responded by saying that the defense was not surprised because she had been listed as a defense witness and subsequently been interviewed by a police officer.    A police report was generated that was given to the Defendant's trial attorney either on the first day of the trial or in the week before the trial, according to respectively the defense attorney and the prosecutor.    The prosecutor claimed that she was therefor included in the July 1 notice since her name was now in a police report.   (Vol. II TR. pg. 6-7).   The trial court denied the prosecutor's request to call Victoria Raymond as a witness because he had not given the defense fourteen days notice.   (Vol. II TR. pg. 72).

The questions put to the Defendant on direct examination, and which the trial court believed opened the door to Victoria Raymond's testimony were these.   (Vol. VIII Tr. pg. 38-39 Vol. X TR. pg. 3-4).

Q.    Sir, have you ever touched your children inappropriately?

A.    No I haven't.

Q.    Have you ever touched any child inappropriately?

A.    No.

The prosecutor also claimed that defense witnesses Markie Jennings, Sam Webb and Judith Rabidue had all put the Defendant's character in

16

issue.   In fact, none of them did; they each denied that Mr. Jennings had touched young girls inappropriately in their presence.   The closest any defense witness came to saying anything about Mr. Jennings character was Mr. Rabidue's statement that she would turn him in herself if she had any evidence that he had pedophiliac tendencies.   (Vol. VIII TR. PG. 152).   She was asked specifically only about Lacey, Cassandra and Katreena.   (Vol. III TR. pg. 133.   She also told the prosecutor on cross-examination that she did not believe that Mr. Jennings would molest a child but that was an expression of belief in response to a gratuitous statement by the prosecutor that she was testifying to her son's good character, when she was not. ( Vol. IX PG. 14).

M.R.E. 404(a) Provides in pertinent part:

**(a) Character evidence generally.   Evidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:**

**(b) Character of accused.   Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same.**

As the Defendant's trial attorney pointed out the Defendant's witnesses testified about what they had seen and heard, not about Mr. Jennings character. The Defendant's denials related to specific actions, not his character, even assuming that his answers were inconsistent with Victoria Raymond's testimony. The trial court relied on People vs. Roper; 286 Mich. App. 77; 777 NW2d 483 (2009) to allow the prosecutor to introduce specific acts of prior conduct of second-degree murder by stabbing one of his roommates.   The trial court ruled that the prosecutor could not introduce into evidence under M.R.E. 404(b)(1) of specific

17

acts of violence.    The Defendant testified, however, that he was not the kind of person who would stab another person, especially a friend, and that he just snapped after the victim continued to verbally abuse him and push him.    The trial court said that this opened the door to introduction of evidence to rebut the Defendant's peaceful character.

There are three significant differences between Roper and the present case.   First, Mr. Jennings did not put his character in issue.    Secondly, Mr. Jennings was not asked on cross-examination whether he had molested Victoria Raymond  when they were both children; he was asked by the  prosecutor only if he was currently sexually  attracted to her which he denied.  (Vol. XIII TR. pg. 56). Roper refers only to denials by the Defendant on cross-examination, but thirdly, the trial court had specifically ruled that the prosecutor would not impeach Judith Rabidue about the alleged bad acts with Victoria Raymond.    (Vol. IX TR. pg. 3). The prosecutor did not directly impeach her in this manner but elicited an answer from Mrs. Rabidue that  no one had ever given her any evidence that Mr. Jennings had molested a child and that she did not know that Victoria Raymond had stabbed Mr. Jennings when they were children.   (Vol. IX pg. 5).

Its admission in the prosecutor's rebuttal case for reasons given by the trial court was thus a clearly unreasonable determination of the facts which denied Defendant a fair trial and entitled him to habeas relief under 28 U.S.C. Section 2254.

With regard to the unadmissible hearsay of the alleged victim's

statements to Officer Luberda, this along with other errors cited, if not standing alone rendered the trial fundamentals unfair and a violation of due process, <u>Clemmons vs. Sounders</u>; 34 F3d, 332 (6th Cir. 1994); <u>Huddleston vs. United States</u>; 681, 691 (1988).

Since the amazing hearsay and it corroborative effect along with the unfair character evidence and pervasive misconduct a harmful and injurious effect on the jury they meet the <u>Brecht</u> standard and habeas should be granted.

The prosecutorial misconduct was so pronounced as to infect the trial with unfairness.   As such, its result conflicts with the clearly established United States Supreme Court authority in <u>Donnelly vs. Delbristforo</u>; 416, U.S. 637 (1974) and habeas relief is warranted.

## **CONCLUSION**

For all of these reasons the court should schedule this petition for an evidentiary hearing so that the Defendant will have a full opportunity to show unreasonable failure to properly investigate and use the alibi defense in which there would have been a high likelihood of a different outcome in the trial.

Dated: September 18, 2013          <u>s/ Robert J. Dunn</u>
                                    ROBERT J. DUNN (P33726)
                                    Attorney for Defendant
                                    822 Washington Avenue
                                    Bay City, Michigan    48708
                                    (989)894-1110
                                    rjdunn928@yahoo.com

19

## **CERTIFICATE OF SERVICE**

I hereby certify that the **PETITION TO VACATE CONVICTION PURSUANT TO 28 U.S.C. SECTION 2254 AND BRIEF IN SUPPORT OF PETITION** was electronically filed on this date with the Clerk of the Court  and all the parties of the case.


DATED: September 18, 2013          s/LeeAnn Hillman_____
                                   LEEANN HILLMAN
                                   Legal Assistant to Robert J. Dunn
                                   822 Washington Avenue
                                   Bay City, Michigan     48708
                                   (989)894-1110
                                   rjdunn928@yahoo.com

20