UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK COLIN JENNINGS,

        Petitioner,     Case No. 4:13-cv-14015
                   Hon. Mark A. Goldsmith

v.

WILLIE SMITH,

        Respondent.
_____/

**OPINION & ORDER**
**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO FILE AN APPEAL IN FORMA PAUPERIS, AND (3) STRIKING PETITIONER'S MOTION FOR DEFAULT JUDGMENT (Dkt. 50)**

Petitioner Mark Colin Jennings, a Michigan prisoner, filed this action under 28 U.S.C. § 2254. Petitioner was convicted in the Saginaw Circuit Court following a jury trial of one count of first-degree criminal sexual conduct pursuant to Michigan Compiled Laws § 750.520b(1)(b). See People v. Jennings, No. 302403, 2012 WL 833243, at *1 (Mich. Ct. App. Mar. 3, 2012). The trial court sentenced Petitioner as a habitual felony offender to 30 to 50 years in prison. Id.

Petitioner raises numerous claims in his federal habeas petition. Nine of the claims were raised on direct review in the Michigan courts, and 21 additional claims were raised in a state post-conviction review proceeding. The Court denies the petition because the claims raised on direct appeal are without merit and because the claims raised in the state post-conviction proceeding are procedurally defaulted. The Court also denies Petitioner a certificate of appealability and leave to file an appeal in forma pauperis.

Finally, Jennings filed a motion for default judgment (Dkt. 50), which is stricken for reasons stated below.

## I. BACKGROUND

Petitioner was charged with engaging in acts of sexual penetration with his daughter, Katreena Jennings, when she was under the age of 16.[1]  The charges arose during the investigation of child-sexual assault cases involving other children.  After he was convicted of first-degree criminal sexual conduct in the present case, Petitioner pled no contest to lesser charges in the other cases.  Petitioner was convicted of one count of first-degree criminal sexual conduct and sentenced as indicated above.

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals.  His appellate counsel filed a brief on appeal that raised four claims: (1) Michigan Compiled Laws § 768.27a, allowing for admission of other-acts evidence in child sexual assault cases to show a propensity to commit sex offenses, violates the separation of powers and due process; (2) the prosecutor committed misconduct by making references to Petitioner's lifestyle; (3) Petitioner's trial was rendered unfair by admission of evidence during the rebuttal case that he sexually assaulted his sister; and (4) the trial court erroneously allowed the admission of hearsay.

Petitioner also filed a pro se supplemental brief, raising an additional five claims: (5) the arrest warrant and complaint were defective; (6) the state district court failed to file the preliminary examination return; (7) Petitioner was not informed of his right to take a polygraph examination;

---

[1] Petitioner Mark Jennings and witness Katreena Jennings share a last name.  The former will be referred to as Petitioner; the latter will be referred to by her full name.

(8) the trial court erroneously found Petitioner competent to stand trial; and (9) Petitioner's counsel was ineffective during pretrial proceedings.

The Michigan Court of Appeals affirmed in an unpublished opinion.  See Jennings, 2012 WL 833243.  Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims that he raised in the Michigan Court of Appeals.  The Michigan Supreme Court denied the application for leave to appeal by form order.  People v. Jennings, 820 N.W.2d 804 (Mich. 2012) (Table).

Petitioner then commenced the instant action, but soon after filing his habeas petition, he filed a motion to stay the case so that he could exhaust additional claims in a state post-conviction review proceeding (Dkt. 4).  The Court granted the motion (Dkt. 9).

Petitioner subsequently filed a motion for relief from judgment in the trial court.  He also filed a string of additional pleadings in the trial court that elaborated upon and raised additional claims.  The quality of the pro se pleadings filed in the trial court makes it difficult to enumerate or summarize the claims Petitioner raised on state collateral review.  See Rule 5 Materials (Dkts. 33-4, 33-5).  Nevertheless, the Court interprets the initial motion for relief from judgment as raising the following claims: (10) Petitioner was denied his right to counsel of choice when the trial court refused to adjourn the trial date; (11) Petitioner was denied his right to an impartial jury; (12) Petitioner was improperly charged with being a third-time habitual felony offender; (13) the trial court failed to resolve factual disputes at sentencing; (14) Petitioner's trial was rendered unfair by the admission of other-acts evidence; (15) Petitioner's counsel was ineffective for failing to present an insanity defense; (16) Petitioner's counsel was ineffective for failing to raise a post-traumatic stress disorder defense; (17) Petitioner's appellate counsel was ineffective for failing to

raise the foregoing claim on direct appeal; and (18) the trial court improperly responded to a jury note as to whether they were required to agree on which act constituted the charged offense.

Petitioner's supplemental pleadings seemed to raise numerous additional claims, though there is room for debate. The Court construes the following claims: (19) insufficient evidence was submitted to sustain Petitioner's conviction; (20) the trial court erroneously instructed the jury that Petitioner committed the charged acts; (21) the trial court incorrectly scored the sentencing guidelines; (22) Petitioner's sentence is based upon inaccurate information; (23) the trial court improperly determined Petitioner's prior record score; (24) Petitioner was denied an opportunity to expand the record in support of his claims; (25) the trial court erred by not having Petitioner present at his competency hearing; (26) the trial court erred in failing to grant an adjournment of trial; (27) the trial court failed to balance interests before it admitted the other-acts evidence; (28) a juror improperly communicated with one of the victims during trial; (29) trial counsel was ineffective for a number of additional reasons; and (30) appellate counsel failed to communicate with Petitioner and to adequately investigate the case.

The trial court issued a series of orders denying Petitioner's post-conviction motions. See Trial Court Opinions and Orders, No. 08-0131116, PageID.1315-1356 (Saginaw Cty. Cir. Ct. 5/27/2016-7/28/2016) (Dkt. 33-2). With respect to Petitioner's initial motion, the trial court found that Petitioner had failed to demonstrate "good cause" or "actual prejudice" under Michigan Court Rule 6.508(D)(3) for failing to raise his new claims on direct review. Id. at PageID.1317. The court found in a second set of orders that to the extent Petitioner attempted to inject additional claims beyond what he presented in his initial motion for relief from judgment, Michigan Court Rule 6.502(G)(1) prevented him from doing so. Id. at PageID.1331-1346.

Petitioner thereafter filed an application for leave to appeal in the Michigan Court of Appeals, and the Court will assume that he attempted to raise the same set of claims he presented to the trial court in all the pleadings filed there.  The Michigan Court of Appeals denied relief by unexplained form order.  People v. Jennings, No. 335203, PageID.1307 (Mich. Ct. App. March 7, 2017) (Dkt. 33-2).  Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, but it was denied by unexplained form order.  People v. Jennings, No. 155609, at PageID.1470 (Mich. October 3, 2017) (Dkt. 33-3).

Petitioner then filed multiple pleadings in this case, both pro se and through counsel, equivocating on whether he wished to reopen the case with or without his counsel, or whether he wished to pursue further relief in the state courts (Dkts. 13, 15, 16, 18, 19, 23, 24, 25, 27). Ultimately, after being ordered to choose a single path, Petitioner elected to continue with this action through counsel, and he elected to present the Court with every claim he presented to the state courts on direct and post-conviction review.  See 3/6/19 Op. & Order (Dkt. 28).  Respondent filed a supplemental answer as well as the record of Petitioner's state post-conviction review proceeding.  The matter is now ready for decision.

## II. STANDARD OF REVIEW

A federal court's review of constitutional claims raised by a state prisoner in a habeas action is curtailed by 28 U.S.C. § 2254(d)(1) if the claims were adjudicated on the merits by the state courts.  Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

A state court's decision is contrary to clearly established law if it applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that

are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different.  Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003).

The "unreasonable application" prong of the statute permits a federal habeas court to grant the writ if the state court identifies the correct governing legal principle from the Supreme Court but unreasonably applies that principle to the facts of petitioner's case.  Wiggins v. Smith, 539 U.S. 510, 520 (2003).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal marks and citations omitted).  "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington, 562 U.S. at 103 (internal quotation omitted).

### III. DISCUSSION

### A. Admission of Other-Acts Evidence under Mich. Comp. Laws § 768.27a

Petitioner's first claim asserts that the state statute under which the other-acts evidence was admitted, Mich. Comp. Laws § 768.27a, is unconstitutional because it sets a more lenient standard for admission than that contained in Michigan Rule of Evidence 404(b).  He asserts that the Michigan Legislature violated separation of powers principles by enacting the provision, and he further asserts that admission of evidence under the statute violates due process because it allows the jury to consider other acts to show a propensity to commit child sex crimes.

Section 768.27a provides that in child sexual assault cases, "evidence that the defendant committed another [sexual assault or similar offense] against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Michigan courts have interpreted this language to allow admission of other-acts evidence to show that the defendant has a propensity to commit child sexual assaults. See People v. Watkins, 818 N.W.2d 296, 298-299 (Mich. 2012). Rule 404(b), on the other hand, prohibits the use of other-acts evidence to support an inference that the defendant had a propensity to act in a way consistent with the charged crime. Id.

Petitioner's separation of powers claim is not cognizable. A federal court may grant an application for writ of habeas corpus only on the ground that the petitioner is in custody in violation of the Constitution, laws, or treaties of the United States, and not for perceived errors of state law. See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). The delegation of powers between two branches of state government under a state constitutional scheme is a matter of state and not federal law. See Austin v. Jackson, 213 F.3d 298, 302 (6th Cir. 2000) (citing Pulley v. Harris, 465 U.S. 37, 41 (1984)). In any event, Michigan courts have held that § 768.27a does not violate Michigan's doctrine of separation of powers. See People v. Pattison, 741 N.W.2d 558, 561-563 (Mich. Ct. App. 2007).

With respect to Petitioner's due process challenge, the Supreme Court, in discussing Federal Rule of Evidence 404(b), stated that using other-acts evidence to "general[ize] a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged" is improper. Old Chief v. United States, 519 U.S. 172, 182 (1997). As a matter of federal constitutional law, however, the Court declined to hold that the improper use of others-acts evidence to show propensity is so extremely unfair that its admission violates due process. See Dowling v. United States, 493 U.S. 342, 352-353 (1990) (finding that the presentation

of evidence of another robbery for which the defendant had previously been tried and acquitted did not violate fundamental conceptions of justice).  The Court found that such matters are more appropriately addressed in codes of evidence and procedure rather than under the Due Process Clause.  Id. at 352.  Put more directly, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003).  Petitioner's claim that the prior-acts evidence admitted in this case violated fundamental fairness cannot be supported by clearly established Supreme Court law.  The claim is, therefore, without merit.

### B. Prosecutorial Misconduct

Petitioner's second claim asserts that the prosecutor committed misconduct by making improper comments regarding Petitioner's lifestyle.  The Michigan Court of Appeals found that some of the comments were improper, but it found in the following passage that the misconduct was insufficiently prejudicial to warrant a new trial:

> Defendant references the prosecutor's closing argument where he commented, as follows:
>
>> You understand how he thinks and how he actually might believe with some splendid success to show for it in his life that he could get away with just about anything sexually with any girl or woman. You know that from hearing him testify.
>
> The prosecutor's argument was in reference to testimony provided by defendant on cross-examination regarding several romantic relationships, both marital and non-marital, that defendant had been involved in, some producing children, and some of the relationships overlapping and some recurring.  The prosecutor also questioned defendant regarding his attempts to move out of the area when events became chaotic.  The prosecutor cross-examined defendant's mother regarding defendant's marital affairs and resulting children, and whether she spoke to defendant regarding birth control.  Defendant did not object to this evidence and does not argue against its admissibility.  In fact, defendant presented extensive testimony detailing his history of romantic relationships, living arrangements, and children produced in the relationships.

8

It was improper for the prosecutor to suggest that defendant's romantic relationship history showed that he had learned that he could get away with just about anything sexually with any girl or woman. However, the prosecutor did not persist in this line of argument and made no other similar arguments. The prosecutor did argue that defendant's history in romantic relationships was abnormal, but did not suggest to the jury that this was evidence that he committed the charged crimes. Evidence of defendant's history of romantic relationships was relevant to the complicated relationships between the defendant and several witnesses and the living circumstances under which the sexual abuse was described to have occurred. Most significantly, defendant has not demonstrated how any evidence or argument about his history of relationships prejudiced him. The jury was able to convict defendant based on its credibility determination of the one witness against whom he was charged with committing a CSC I. Moreover, the court properly instructed the jury that it alone was charged with deciding the facts of the case, that it should take the law as the court instructs, and that the lawyers' statements and arguments are not evidence. It is well established that jurors are presumed to follow their instructions.

Jennings, 2012 WL 833243, at *1-2 (internal citations and quotation marks omitted).

This decision did not unreasonably apply the clearly established standard for adjudicating claims of prosecutorial misconduct. "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." Millender v. Adams, 376 F.3d 520, 528 (6th Cir. 2004). A prosecutor's conduct will violate a criminal defendant's constitutional rights only if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986). To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of the claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Parker v. Matthews, 567 U.S. 37, 48 (2012) (quoting Harrington, 562 U.S. at 103).

As reasonably found by the Michigan Court of Appeals, the fact that Petitioner had romantic relationships with several women and fathered children from multiple partners was relevant background information and necessary to an understanding of the relationship between

9

the complainant and the other-acts witnesses, as well as the relationship between Petitioner and the children's mothers. The evidence not only clarified how and when Petitioner had access to the various children, but it was also a factor used in Petitioner's defense to suggest that the mothers were motivated out of jealousy of each other to elicit false accusations from their children. The background information was also used by Petitioner to argue that the women were motivated to file false charges to obtain his veteran and social security benefits.

Even to the extent the remarks were improper comments on Petitioner's character, they constituted a brief portion of the closing argument, reducing the potential prejudicial impact. Prosecutorial misconduct claims are often denied, as here, when the challenged comments are "neither flagrant nor repeated." See, e.g., Joseph v. Coyle, 469 F.3d 441, 474 (6th Cir. 2006).

Finally, the jury was instructed that it should decide the case based on the evidence, and that the arguments by the attorneys were not evidence. Curative instructions provide another reasonable basis for rejecting prosecutorial misconduct claims. See id. at 475. There is no reason to believe that the jury was unable to follow the curative instructions. Accordingly, the state court decision did not unreasonably apply the established Supreme Court standard.

### C. Erroneous Admission of Rebuttal Evidence

Petitioner's third claim asserts that he was denied a fair trial when the prosecutor was permitted to call Petitioner's sister in its rebuttal case to testify that Petitioner sexually assaulted her as a child. The Michigan Court of Appeals rejected the claim on the merits in the following passage:

> We conclude that the prosecution properly introduced the testimony of defendant's sister to rebut character evidence introduced by defendant and his mother. During direct examination of defendant, he testified that he had never touched a child in an inappropriate manner. On cross-examination, defendant specifically testified that he did not have a sexual attraction toward his sister and again testified that he had not inappropriately touched a child. Similarly,

defendant's mother testified during direct examination that she had no evidence that defendant had ever inappropriately touched a child and that if she had any such evidence that she would have reported defendant. In response, the prosecution presented the testimony of defendant's sister, who testified that defendant had touched her inappropriately from the time she was five years old until she was twelve. She further testified that she told her and defendant's mother about the improper conduct and was told by her mother to never speak of it again.

The testimony of defendant's sister was offered to rebut defendant's specific testimony regarding his lack of attraction to his sister and his claim that he had never inappropriately touched a child. We hold that, pursuant to [People v. Roper, 777 N.W.2d 483, 500-501 (Mich. 2009)], the trial court did not abuse its discretion in admitting the evidence. We further note that even if the evidence was not proper rebuttal evidence, defendant would not be entitled to relief in light of the overwhelming evidence of his guilt that was properly admitted.

Jennings, 2012 WL 833243, at *2-3.

This decision did not contravene clearly established law. "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." Kelly v. Withrow, 25 F.3d 363, 370 (6th Cir. 1994). To the extent Petitioner claims it was error to allow his sister to testify in the rebuttal case as opposed to the prosecutor's case-in-chief, that is a non-cognizable claim. See Slack v. Cason, 258 F. Supp. 2d 727, 733 (E.D. Mich. 2003).

It was reasonable for the state court to find that admission of the evidence did not warrant a new trial. Whether the erroneous admission of testimony violated fundamental fairness "turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." Brown v. O'Dea, 227 F.3d 642, 645 (6th Cir. 2000) (quotation marks and citations omitted). That evaluation allows a habeas court to consider the strength of the other evidence of guilt. Hudson v. Lafler, 421 F. App'x 619, 629 (6th Cir. 2011).

Petitioner specifically testified on direct examination that he never touched any child inappropriately. 12/01/2010 Tr. at PageID.599-600 (Dkt. 8-19). As the state court affirmed, this

opened the door for the prosecutor to present evidence that Petitioner sexually touched his sister when she was a child. See Jennings, 2012 WL 833243, at *3 (citing Roper, 777 N.W.2d at 500-501). Petitioner's mother testified to Petitioner's good character and that she would have reported Petitioner to authorities if she believed him to be a pedophile. 12/01/2010 Tr. at PageID.628. This opened the door for the prosecutor to present evidence that her daughter told her that Petitioner molested her, but her mother did nothing. Jennings, 2012 WL 833243, at *3. It was reasonable for the state appellate court to reject the claim in light of the testimony presented in the defense case.

Moreover, as the state appellate court noted, the evidence presented against Petitioner was strong. Id. Petitioner's claim that the children and their mothers were out to get him was belied by the fact that only one child came forward on her own, and the other allegations were uncovered during the resulting investigation. The sister's testimony, at worst, was cumulative to the other prior-acts evidence. Its admission in the rebuttal case did not render Petitioner's trial fundamentally unfair. The claim is without merit.

### D. Admission of Hearsay

Petitioner's fourth claim asserts that the trial court erroneously allowed the admission of hearsay statements during the testimony of Officer Cindy Luberda, a school police officer from Michigan who investigated the case. He claims that the officer was improperly allowed to describe the content of the victim's and the other-act witnesses' statements to her and during forensic interviews. The Michigan Court of Appeals found that several of the statements were not properly admitted, but it found that any minimal prejudicial impact did not warrant a new trial. Jennings, 2012 WL 833243, at *4-6.

The Court initially notes that the claim fails under the Confrontation Clause because the declarants of the hearsay statements all testified at trial and were subject to full and fair cross-examination.  See Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004) (citing California v. Green, 399 U.S. 149, 162 (1970)).

To the extent Petitioner claims a due process violation, the claim fails because it cannot be supported by clearly established Supreme Court law.  There is an "absence of a Supreme Court holding granting relief on [Petitioner's] due process theory: that the admission of allegedly unreliable hearsay testimony violates the Due Process Clause."  Desai v. Booker, 732 F.3d 628, 630 (6th Cir. 2013).   In any event, Petitioner has failed to demonstrate that the erroneously admitted hearsay statements violated fundamental fairness by playing a highly significant role in the outcome of the trial.  See Brown, 227 F.3d at 645.

First, with respect to Kirsten Riselay, one of the witnesses who provided other-act testimony, Luberda testified that Riselay described having sexual intercourse with Petitioner on three occasions, including one occasion involving Katreena Jennings.  11/24/2010 Tr. at PageID. 485 (Dkt. 8-17).   This information was already presented to the jury during Riselay's own testimony.  11/19/2010 Tr. at PageID.388-389 (Dkt. 8-15).  Petitioner's counsel cross-examined Riselay about any perceived inconsistencies between her trial testimony and the prior statements. Luberda's testimony regarding Riselay's prior statement was, therefore, cumulative to the testimony already presented to the jury and did not play a significant role at trial.

Luberda also testified with respect to Stephanie Averill, a witness who provided other-act evidence that Petitioner challenged by introducing prior inconsistent statements.  Luberda testified that Averill told her she pushed Petitioner's hand away as he moved his hand up her inner thigh, and that she then ran into her mother's bedroom and locked herself inside the room.  11/24/2010

Tr. at PageID.479 (Dkt. 8-17).  This testimony was largely consistent with Averill's own testimony that after Petitioner placed his hand on her inner thigh, she went into her mother's closet and called her father.  11/23/2010 Tr. at PageID.430-431 (Dkt. 8-16).  Petitioner's counsel cross-examined Averill about slight inconsistencies in the two accounts.  Id. at 435, 436, 439, 441-442.  Luberda's subsequent testimony regarding Averill's prior statements addressed and sought to explain the apparent inconsistencies.  The testimony did not render Petitioner's trial unfair.

Finally, with respect to Katreena Jennings's prior statements, Luberda testified that she reviewed the recording of a forensic interview conducted by a detective in Oklahoma, in conjunction with Luberda's investigation. 11/24/2010 Tr. at Page.ID.483.  Katreena Jennings mentioned during the interview that Petitioner would hang out with Riselay.  Id. at 484.  This led Luberda to focus the investigation on Riselay.  Id.  Luberda similarly testified that but for Katreena's references to Averill, she would not have known to investigate Averill as a potential witness.  Id. at 482.  This testimony was not erroneously admitted because it was used for a non-hearsay purpose of showing why the police investigated Riselay and Averill.  See Adams v. Holland, 168 F. App'x 17, 20 (6th Cir. 2005).

Moreover, Petitioner impeached Katreena Jennings by using the same transcript from the Oklahoma interview referred to in Luberda's testimony. 11/23/2010 Tr. at PageID. 458-459.  Therefore, there was nothing fundamentally unfair about the prosecutor using the transcript during his examination of Luberda. The jury was already presented with portions of the prior statement by the defense on cross-examination of the victim.

Petitioner's fourth claim is, therefore, without merit.

14

### E. Jurisdiction of the Trial Court

Petitioner's next two claims attack the jurisdiction of the trial court.  He asserts in his fifth claim that the warrant and the criminal information filed in the state circuit court were defective under Michigan law.  His sixth claim asserts that the state district court failed to properly file the "return" document following the preliminary examination.  Petitioner asserts that the state circuit court never acquired jurisdiction to try him as a result of these defects. The claims are not cognizable.

The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of the state courts, not the federal courts.  Wills v. Egeler, 532 F.2d 1058, 1059 (6th Cir. 1976); see also Daniel v. McQuiggin, 678 F. Supp. 2d 547, 553 (E.D. Mich. 2009).  The Sixth Circuit has noted that "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review." Strunk v. Martin, 27 F. App'x. 473, 475 (6th Cir. 2001).  Petitioner's fifth and sixth claims do not present a basis for federal habeas relief.

### F. Polygraph Examination

Petitioner's seventh claim is that the prosecutor failed to ensure that he was afforded his right under Michigan law to a polygraph examination.  This claim, as the previous two, raises a non-cognizable issue of state law.

Michigan law allows a defendant accused of criminal sexual conduct to request a polygraph examination.  Mich. Comp. Laws § 776.21(5).  If a defendant takes and passes the test, a law enforcement officer must inform the victim.  Mich. Comp. Laws § 776.21(3).  Other than informing the victim of the passed test, however, the statute does not afford the defendant any benefit.  Polygraph test results are inadmissible in criminal cases in Michigan.  People v. Phillips,

15

666 N.W.2d 657, 661 (Mich. 2003).  Accordingly, Petitioner has failed to show how the failure to inform him of his right to a polygraph violated his federal constitutional rights or impacted the outcome of his trial.  The claim is without merit.

**G. Competency to Stand Trial**

Petitioner's eighth claim asserts that the trial court erroneously determined that he was competent to stand trial.  The Michigan Court of Appeals rejected the claim on the merits. Jennings, 2012 WL 833243, at *7.

A criminal defendant has a constitutional right not to be tried or convicted while incompetent.  See Pate v. Robinson, 383 U.S. 375, 378 (1966).  To be competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam).  Due process requires a trial court to conduct a competency hearing "where there is substantial evidence that a defendant is incompetent."  Filiaggi v. Bagley, 445 F.3d 851, 858 (6th Cir. 2006).  In assessing the necessity of a competency evaluation, a court may consider "a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial."  Drope v. Missouri, 420 U.S. 162, 180 (1975).

Prior to trial, defense counsel filed a petition to have Petitioner evaluated for his competence to stand trial.  See 6/30/2009 Tr. (Dkt. 8-7).  The trial court referred Petitioner to the state's Forensic Center for an evaluation.  Id.  Petitioner was evaluated by a licensed psychologist forensic examiner, Nicole T. Kletzka.  See Keltzka Report at PageID.926-934 (Dkt. 8-31). The examiner reviewed court documents, read the preliminary examination transcript, read letters written by Petitioner and his counsel, spoke with Petitioner's attorney, conducted a nearly 4-hour

clinical interview of Petitioner, and administered a test known as the Minnesota Multiphasic Personality Inventory.  Id. at Page.ID.927.  Based on these materials, the examiner concluded Petitioner was competent to stand trial: "Mr. Jennings is capable of understanding the nature and object of the proceedings against him and of assisting in his defense in a rational manner."  Id. at Page.ID.934.

Defense counsel subsequently requested a second opinion, and the trial court ordered an independent evaluation.  See 9/25/2009 Tr. (Dkt. 8-8).  Though a copy of the report does not appear in the record, the second evaluator also determined that Petitioner was competent to stand trial.  See 1/27/2010 Order at PageID.981 (Dkt. 8-31).  The trial court thereafter issued an order finding Petitioner competent to stand trial.  Id.

"A state-court determination of competence is a factual finding, to which deference must be paid."  Franklin v. Bradshaw, 695 F.3d 439, 447 (6th Cir. 2012) (citing Thompson v. Keohane, 516 U.S. 99, 108-111 (1995)).  The "findings of the state court must be upheld unless there is clear and convincing evidence to the contrary."  Id.  The trial judge found Petitioner competent to stand trial after reviewing the two reports prepared by two forensic examiners.  Kletzka's report constituted substantial evidence upon which the state court trial judge could base his finding that Petitioner was competent to stand trial.  See Stanley v. Lazaroff, 82 F. App'x 407, 416 (6th Cir. 2003).  Petitioner offers no evidence to the contrary.  Therefore, Petitioner's "arguments do not satisfy AEDPA's standard by identifying clear and convincing evidence that the state court unreasonably determined that he was competent to stand trial."  Id. at 417-418.  Petitioner is not entitled to relief on this claim.

### H. Ineffective Assistance of Counsel

Petitioner's ninth claim asserts that his trial attorney performed ineffectively prior to trial. Petitioner asserts that his counsel failed to raise the jurisdictional issues discussed above, failed to insist on the polygraph examination, and failed to further press the issue of Petitioner's competency. The Michigan Court of Appeals rejected this claim on the merits:

> [T]he record demonstrates that defendant's trial counsel was present at the pretrial hearings where circuit court jurisdiction was established and competency was discussed. Defendant's trial counsel ensured that defendant had two competency examinations prior to trial. Defendant's trial counsel did not object to the procedural issues that defendant raises, and did not request a polygraph examination. However, as discussed above, there were no jurisdictional defects in this case. Counsel is not ineffective for failing to make a futile objection. Likewise, there is nothing of record indicating that counsel did not abide by defendant's decision regarding whether to have a polygraph examination. Therefore, defendant has not demonstrated that his trial counsel's performance was deficient.

Jennings, 2012 WL 833243, at *7 (internal citation omitted).

To establish ineffective assistance of counsel, a defendant must show both that (i) counsel's performance was deficient, meaning, "that counsel's representation fell below an objective standard of reasonableness"; and (ii) the deficient performance resulted in prejudice to the defense. Strickland v. Washington, 466 U.S. 668, 687-688 (1984). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal citation and quotation marks omitted). The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. For a state court's adjudication of a Strickland claim to be unreasonable under 28 U.S.C. §2254(d)(1), it "must have been 'so lacking in justification' that it amounts to 'an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement.'" Hendrix v. Palmer, 893 F.3d 906, 922 (6th Cir. 2018) (quoting Harrington, 562

U.S. at 103).

The state appellate court reasonably rejected the claim. See Jennings, 2012 WL 833243 at

*7. The state court determined that as a matter of state law the jurisdiction claims lacked merit.

The failure to raise a meritless claim does not constitute ineffective assistance of counsel. Mahdi

v. Bagley, 522 F.3d 631, 638 (6th Cir. 2008). Nor was counsel ineffective in how he handled the

competency issue. When counsel ascertained a basis for an evaluation, he successfully moved for

one. When the initial evaluation indicated that Petitioner was competent, counsel successfully

moved for an independent evaluation. When that evaluation also indicated Petitioner's

competence, it was reasonable for counsel to not press the issue further. Finally, as indicated

above, Petitioner cannot show how he was prejudiced by the failure of his counsel to demand a

polygraph examination. A positive test result would not have been admissible at trial. Petitioner's

ineffective assistance of trial counsel claim was reasonably adjudicated and is therefore without

merit.

### I. Procedural Default

Petitioner's remaining claims were raised in the state courts in his motion for relief from

judgment and in the multiple supplemental pleadings he filed in the trial court after this Court

granted his motion to stay. Respondent contends that these claims are procedurally defaulted

because the trial court found the claims raised in Petitioner's initial motion to be barred from

review under Michigan Court Rule 6.508(D)(3), and because Petitioner's supplemental pleading

were prohibited by Michigan Court Rule 6.502(G).

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is barred unless Petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or if he can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750-751 (1991). If Petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. Smith v. Murray, 477 U.S. 527, 533 (1986). Petitioner may also overcome a procedural bar by proving his actual innocence. Murray v. Carrier, 477 U.S. 478, 479-480 (1986); Schlup v. Delo, 513 U.S. 298, 324 (1995).

Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant where his motion for relief from judgment alleges grounds for relief that could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. Meanwhile, Michigan Court Rule 6.502(G) provides that a defendant is generally limited to filing a single motion for relief from judgment. When a Michigan court relies on either of these procedural rules as a ground for denying post-conviction relief, it bases its decision on a state procedural ground independent of federal law and adequate to bar subsequent federal habeas review. See Ivory v. Jackson, 509 F.3d 284, 292-293 (6th Cir. 2007) (Rule 6.508(D)(3)); Howard v. Bouchard, 405 F.3d 459, 477 (6th Cir. 2005) (Rule 6.508(D)(3)); Ingram v. Prelesnik, 730 F. App'x 304, 311 (6th Cir. 2018) (Rule 6.502(G)).

Neither the Michigan Court of Appeals nor the Michigan Supreme Court explicitly rejected Petitioner's post-conviction appeal based on either of these rules. The Michigan Court of Appeals denied relief because "the defendant failed to establish that the trial court erred in denying his motion for relief from judgment." 3/7/2017 Order at PageID.1307 (Dkt. 33-2). The Michigan Supreme Court denied relief because "the defendant has failed to meet the burden of established

entitlement to relief under MCR 6.508(D)." 10/3/2017 Order at PageID.1470 (Dkt. 33-3). Because the form orders issued by these court are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are considered unexplained and not the invocation of a state procedural basis for the decisions. See Guilmette v. Howes, 624 F.3d 286, 291 (6th Cir. 2010) (en banc) (omission of subsection (D)(3) from form order rendered order unexplained). When faced with unexplained from orders from the Michigan appellate courts, Guilmette directs a habeas court to look to the trial court's order to determine the basis for the state court's rejection of Petitioner's claims. Id.

The trial court explicitly relied on procedural rules for denying Petitioner post-conviction relief. With respect to Petitioner's initial motion, which raised what now form Petitioner's tenth through eighteenth claims, the state trial court found that Petitioner failed to demonstrate "good cause" or "actual prejudice" under Rule 6.508(D)(3) for failing to raise the claims on direct review. See Trial Court Opinions and Orders PageID.1317. The court dealt with Petitioner's various supplemental motions, raising what now form his nineteenth through thirtieth claims, by finding that they were prohibited by Rule 6.502(G)(1). Id. at PageID. 1331-1346.

Because the trial court denied Petitioner post-conviction relief based on the procedural grounds stated in Rule 6.508(D)(3) and 6.502(G), Petitioner's post-conviction claims are procedurally barred from review. The fact that the trial judge also discussed the merits of Petitioner's first set of post-conviction claims in addition to invoking the provisions of Rule 6.508(D)(3) does not alter this result. See McBee v. Abramajtys, 929 F.2d 264, 267 (6th Cir. 1991); Alvarez v. Straub, 64 F. Supp. 2d 686, 695 (E.D. Mich. 1999). All of Petitioner's state post-conviction review claims are, therefore, barred from review unless Petitioner can demonstrate

21

cause and prejudice or actual innocence. As the following discussion explains, Petitioner has not

met this burden.

Petitioner alleges in his seventeenth claim that his appellate counsel's failure to raise his

new claims constituted ineffective assistance of counsel and excuses his non-compliance with Rule

6.508(D)(3). Ineffective assistance of appellate counsel can establish cause for a procedural

default. See Ivory, 509 F.3d at 294. It is well established, however, that a criminal defendant

does not have a constitutional right to have appellate counsel raise every non-frivolous issue on

appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983). The United States Supreme Court has

explained this principle as follows:

> For judges to second-guess reasonable professional judgments and impose on
> appointed counsel a duty to raise every "colorable" claim suggested by a client
> would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the
> Constitution or our interpretation of that document requires such a standard.

Id. at 463 U.S. at 754.

The Supreme Court subsequently noted the following:

> Notwithstanding Barnes, it is still possible to bring a Strickland claim based on
> [appellate] counsel's failure to raise a particular claim [on appeal], but it is difficult
> to demonstrate that counsel was incompetent.

Smith v. Robbins, 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left

to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir.

1990). "Generally, only when ignored issues are clearly stronger than those presented will the

presumption of effective assistance of appellate counsel be overcome." Monzo v. Edwards, 281

F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice

a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious

from the trial record and would have resulted in a reversal on appeal.  See Meade v. Lavigne, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims raised in Petitioner's post-conviction motion.  Appellate counsel filed a substantial brief raising what now form Petitioner's lead four habeas claims.  Petitioner has not shown that appellate counsel's strategy in presenting these four claims and not raising other claims was deficient or unreasonable.  Moreover, for the reasons stated by the trial court in rejecting Petitioner's post-conviction claims on the merits in the alternative to finding them barred, the claims raised by Petitioner in his post-conviction motion were not "dead bang winners." See Trial Court Opinions and Orders Page.ID.1317-1328.  Because Petitioner's post-conviction claims were not clearly stronger than the claims raised on direct review, Petitioner has failed to establish cause for his procedural default.

Petitioner has, therefore, failed to establish cause to excuse the default of all of his post-conviction claims. And because he has failed to demonstrate cause, the Court need not address whether Petitioner can establish prejudice. See Smith, 477 U.S. at 533.  Finally, Petitioner makes no effort to excuse his procedural default by establishing his actual innocence.  Consequently, review of Petitioner's post-conviction review claims is barred.

As none of Petitioner's claims merit relief, the petition will be denied.

## IV. CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

Before Petitioner may appeal this decision, the Court must determine whether to issue a certificate of appealability.  See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To satisfy § 2253(c)(2), Petitioner must show "that

reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). The Court finds that reasonable jurists would not debate the resolution of any of Petitioner's claims. The Court will, therefore, deny a certificate of appealability.

Although Petitioner initially paid the filing fee (Dkt. 1) and retained counsel, he later filed applications to proceed without prepaying fees or costs (Dkts. 17, 20). Insofar as Petitioner requests permission to appeal in forma pauperis, the Court denies the request, because any appeal of this decision would be frivolous and could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. MOTION FOR DEFAULT JUDGMENT

The Court previously ordered Petitioner to choose whether he wished to proceed with his retained attorney or whether he wished to proceed on his own (Dkt. 22). Petitioner elected to  proceed with counsel (Dkt. 23).   Nevertheless, Petitioner has filed yet another pro se motion, this time for default judgment (Dkt. 50). As Petitioner is proceeding with counsel, his pro se motion  is stricken.

## VI. CONCLUSION

Accordingly, the court denies with prejudice the petition for a writ of habeas corpus, denies a certificate of appealability and leave to appeal in forma pauperis, and strikes Petitioner's motion for default judgment (Dkt. 50).

**SO ORDERED.**

Dated:  April 9, 2021                s/Mark A. Goldsmith
     Detroit, Michigan            MARK A. GOLDSMITH
                                 United States District Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 9, 2021.

s/Karri Sandusky      <br>Case Manager